2014 UT App 62

**Timothy PAGET and Annette Paget, Plaintiffs and Appellants,**

v.

**DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

No. 20120481–CA.

Court of Appeals of Utah.

March 20, 2014.

Mark R. Taylor and David C. Biggs, Attorneys for Appellants.

Sean D. Reyes and Peggy E. Stone, Salt Lake City, Attorneys for Appellee.

Judge JAMES Z. DAVIS authored this Opinion, in which Judge CAROLYN B. MCHUGH concurred.[1] Judge GREGORY K. ORME dissented, with opinion.

Opinion on Rehearing[2]

DAVIS, Judge:

¶ 1 We previously addressed this case in *Paget v. Department of Transportation,* 2013 UT App 161, 2013 WL 3226212. There, we affirmed the trial court's determination that the Pagets' expert testimony establishing the standard of care that the Utah Department of Transportation (UDOT) allegedly violated was inadmissible. *Id.* ¶ 15. However, we reversed the trial court's summary judgment ruling in favor of UDOT because we determined that UDOT had failed to prove that its decision not to erect a median barrier was reasonable as a matter of law. *Id.* ¶ 22. After we issued that decision, UDOT filed a petition for rehearing in which it asserted that the Pagets could not establish a prima facie case of negligence without the excluded expert testimony and that UDOT was therefore entitled to judgment as a matter of law. We agree and now affirm the trial court's summary judgment ruling in favor of UDOT. Accordingly, this supplemental opinion supersedes Part II of our previously-issued opinion insofar as the two opinions conflict.

¶ 2 Although UDOT was unable to definitively establish that its actions were reasonable, we agree with UDOT that this is "not the only way UDOT can show it is entitled to judgment as a matter of law." To avoid summary judgment, the Pagets were required to make out a prima facie case of negligence against UDOT, including presenting evidence from which the jury could find that UDOT's decision not to erect a median barrier fell below the applicable standard of care. The

trial court summarized its decision as follows: "[I]n compliance with [the trial court's] gatekeeping responsibility to exclude unreliable expert testimony, [the Pagets' expert's] testimony is rejected by the Court. Based upon the undisputed material facts in this case, there is no evidence that UDOT's design of I–80 fell below a recognized standard of care." We agree with the trial court that the Pagets cannot establish essential elements of their negligence claim without the testimony of their expert and that summary judgment was therefore appropriate. *Cf. Jenkins v. Jordan Valley Water Conservancy Dist.,* 2013 UT 59, ¶¶ 2, 4, 321 P.3d 1049 (holding that "the question whether a pipeline needs to be replaced is outside the knowledge and experience of average lay persons" and that homeowners whose basement was flooded by a broken pipe "had an obligation to designate an expert to establish a basis for" their argument that the water conservancy district had a duty to replace the pipeline before the break occurred); *Spafford v. Granite Credit Union,* 2011 UT App 401, ¶ 34, 266 P.3d 866 (holding that a plaintiff's lack of expert testimony establishing "that the height of the curb [on which she was injured] or the slope of the asphalt violated any specific industry standards or otherwise constitute[d] a deviation from accepted practice" prevented the plaintiff from establishing breach of duty or causation and that summary judgment in favor of the defendant was therefore appropriate (second alteration in original) (citation and internal quotation marks omitted)).

¶ 3 In their reply brief and in their response to UDOT's petition for rehearing, the Pagets asserted for the first time that they could establish a prima facie case without expert testimony because "laypersons could easily recognize the 'obvious dangerous and unsafe' condition created by the absence of a median barrier along the subject portion of I–80." (Quoting *Peck v. Horrocks Eng'rs, Inc.,* 106 F.3d 949, 955 (10th Cir.1997) (apply-

---

1. Judge Carolyn B. McHugh participated in and voted on this case as a member of the Utah Court of Appeals. She resigned from the court before this decision issued.

2. Our original opinion in this matter was issued on June 27, 2013. *See Paget v. Department of Transp.,* 2013 UT App 161, 2013 WL 3226212.

We thereafter granted UDOT's petition for rehearing and heard arguments thereon. This opinion resolves the petition for rehearing. As explained in the lead opinion, while the substantive analysis of our original opinion remains unaltered, the result is changed from a remand to an affirmance.

ing Utah law indicating that expert testimony is unnecessary to establish reasonable care where a condition is "so obviously dangerous and unsafe immediately prior [to the accident] that any person could recognize the danger" (citation and internal quotation marks omitted)).) This argument was not preserved in the trial court,[3] but even if it had been, we are not convinced that the lack of a median barrier in this case was so obviously dangerous that the Pagets could have established the standard of care without expert testimony. *Cf. Jenkins,* 2013 UT 59, ¶¶ 16–19, 321 P.3d 1049 (rejecting a plaintiff's assertion that the standard of care for replacing cast-iron pipe could be established without expert testimony, explaining that such an assessment is "inherently complex and case-specific, requiring the detail necessary to perform the cost-benefit calculus and the sophistication necessary to interpret it").

¶ 4 In the absence of admissible evidence that UDOT's design of I–80 fell below a recognized standard of care, the Pagets cannot establish a prima facie case of negligence against UDOT. Therefore, even though UDOT has not established that its design met the applicable standard of care as a matter of law, our determination that the trial court did not err in excluding the Pagets' expert leads us to the conclusion that summary judgment in favor of UDOT was appropriate. Accordingly, we affirm the trial court's summary judgment ruling.

**ORME, Judge (dissenting):**

¶ 5 I disagree with my colleagues' determination to meddle in what should be the business of the trial court on remand. I do acknowledge that there is a certain logic to their underlying position and that it makes sense to affirm a grant of summary judgment in most cases when a plaintiff needs an expert to establish a prima facie case and the plaintiff does not have such an expert. But this case is on a different footing than such cases generally.

¶ 6 The theory of UDOT's summary judgment motion was *not* that the Pagets lacked a viable expert to opine as to UDOT's standard of care and thus could not prevail as a matter of law. UDOT's sole theory[4] in bringing its motion for summary judgment was that AASHTO, as explained by its expert, established UDOT's duty of care and that UDOT met its duty in opting not to install a median barrier at the crash site. The Pagets, like UDOT, had lined up an expert, and he countered the views expressed by UDOT's expert. In considering the motion for summary judgment, the trial court concluded that the AASHTO standard governed and had been met by UDOT, and that there was nothing left for trial because the Pagets' expert's testimony was legally flawed and thus UDOT's theory stood unrefuted. In other words, the trial court's critique of the Pagets' expert's testimony was in the context of evaluating whether a dispute war-

3. The dissent asserts that UDOT's sole theory in its motion for summary judgment was that the standards developed by the American Association of State Highway and Transportation Officials (AASHTO) established the standard of care. However, UDOT also argued that the Pagets' claim would fail if their expert were disqualified and asserted, "[C]laims of engineering negligence must be supported with competent expert testimony; otherwise, the claim fails as a matter of law." The trial court implicitly accepted this argument as an alternative basis for summary judgment when it pointed out, after excluding the testimony of the Pagets' expert, that there was "no evidence that UDOT's design of I–80 fell below a recognized standard of care." Despite UDOT's argument and the trial court's ruling, the Pagets never argued to the trial court that they could establish the standard of care without expert testimony.

4. My colleagues assert in footnote 3 that I have this wrong, that UDOT also contended that the Pagets' claim would fail as a matter of law if

their expert were disqualified. Here is the only substantive paragraph in UDOT's motion for summary judgment in its entirety, and the emphasis of the singular is mine:

> *The reason* for this motion is as follows: This case involves a motor vehicle accident in which a vehicle crossed a median and collided with plaintiffs' oncoming car. Because a median barrier may have prevented the accident, the issue for the trier of fact is whether the lack of a median barrier fell below the highway engineering standards of care. The State of Utah has adopted a standard, promulgated by the American Association of State Highway and Transportation Officials (AASHTO), which did not require median barriers for medians greater than 30 feet wide. Here, the median was over 40 feet wide, and so no barrier was required. Thus, UDOT did not breach any applicable standard and cannot be held liable as a matter of law.

ranting trial had been shown by the Pagets, and the court concluded it had not.[5]

¶ 7 What makes this case somewhat unique is that, while affirming the trial court's rejection of the testimony from the Pagets' expert, we also ruled that it should have rejected that of UDOT's expert centered on the flawed AASHTO "standard." As that was the sole basis for the trial court's grant of summary judgment to UDOT, it followed—and still follows—that the judgment as entered by the trial court cannot stand.

¶ 8 Could UDOT bring a second motion for summary judgment, contending that the Pagets could not establish a prima facie case in the absence of an expert witness and that the time for designating experts has run? Of course. And that was the thrust of UDOT's petition for rehearing—that we should affirm the summary judgment on the alternative ground that the Pagets were destined to lose without an expert even though we concluded that UDOT was not entitled to summary judgment on the ground that it advanced and that the trial court accepted. As UDOT put it in its petition for rehearing, "[R]emand to the district court will be a needless waste of the partie[s'] time and money and judicial resources because the Pagets will be unable to withstand either a second motion for summary [judgment] or a motion for directed verdict at trial." UDOT may well be right about that, but I see no compelling need to cut short the normal flow of events on the basis of UDOT's self-serving concern over judicial economy.

¶ 9 The flaw in the thinking of UDOT and my colleagues is that the deadline for designation of experts in this case is not a product of natural law, constitutional requirement, statutory mandate, the Utah Rules of Civil Procedure, or even a local rule. The deadline was simply a provision contained in the trial court's scheduling order. And as such, it is entirely within the purview of the trial court to adjust or revise it as the trial court may deem appropriate. On remand, would the Pagets ask the trial court to give them a second chance to find an expert? I don't know. If they did ask, would the trial court accommodate them? I don't know. But I do know that it is appropriate for that to play out, as it will, in the trial court, rather than to be micromanaged by this court.

¶ 10 The focus of the debate between UDOT and the Pagets on summary judgment was whether the AASHTO standard, as interpreted by UDOT's expert, meant that UDOT was free to install a median barrier at the accident site or not to install one, as a matter—essentially—of whim. The trial court did not buy the Pagets' expert's attack on that theory because his approach was flawed. We affirmed that determination. But we reversed the trial court's conclusion that AASHTO set the applicable standard, concluding that the "standard" was circular nonsense. And on that basis we vacated the summary judgment in favor of UDOT and remanded the case to the trial court so that it could decide what should happen next. Trial courts are very adept at managing the cases pending before them and I see no need for this court to wrest control of this case from the trial court.

¶ 11 If I were the trial judge and the case were sent back to me in the posture envisioned in our initial opinion, maybe I would decline to give the Pagets a new opportunity to engage an expert. That done, I might then grant a renewed motion for summary

**5.** My colleagues, in footnote 3, also contend the trial court premised its grant of summary judgement to UDOT on the alternative ground that "the claim fails as a matter of law" if Pagets have no expert. This is a real stretch. The lynchpin of the trial court's analysis, as set forth in its memorandum decision, is that "UDOT met the AASHTO standard adopted by the State of Utah" and, again, that "UDOT complied with the adopted governing standard pertaining to median barriers in the State of Utah." The thrust of its rejection of the Pagets' expert's testimony was that the expert "cannot contravene published standards based upon his unsupported opinion alone." It was in the context of having just concluded that AASHTO set the standard governing UDOT's duty, and having concluded that the Pagets' expert did not succeed in undercutting it, that the trial court determined that "there is no evidence that UDOT's design of I–80 fell below a recognized standard of care." It is clear to me that the trial court's erroneous acceptance of AASHTO as setting forth a meaningful standard drove its decision, and we unanimously rejected that conclusion in our initial opinion. Of course, *to the extent that the trial court's memorandum decision is amenable to differing interpretations,* it is only another reason why it makes sense to let the trial court revisit the matter.

judgment by UDOT, this time premised on the Pagets' need for an expert and their lack of one. But I might well be amenable to the suggestion that the sea change in the posture of the case, prompted by unanticipated appellate intervention, necessitates taking a step back and giving both sides a chance to regroup, including giving both sides a chance to engage new experts who would focus on the actual gravamen of UDOT's alleged negligence—was UDOT negligent for not installing a median barrier at the crash site before it did?—rather than on the sideshow that was the flawed AASHTO "standard." Or I might conclude that the Pagets were not to blame for the fact that their expert's methodology and opinions were flawed and that, in the interest of justice, they should have ninety days, say, to line up a new one.

¶ 12 We ruled correctly in the first instance in this case. We set aside the summary judgment in favor of UDOT because UDOT was not entitled to judgment as a matter of law on the theory it advanced. That done, perhaps there was no need to also opine about the merit of disallowing the Pagets' expert witness. Having reversed the summary judgment for lack of merit on its own terms, we could simply have remanded without considering the bona fides of the Pagets' expert. But the Pagets had contended that the trial court erred in disallowing his testimony, and the question was fully briefed. It seemed appropriate to resolve it. Still, our decision in UDOT's favor on that issue should not trump its failure to establish its entitlement to judgment as a matter of law on the ground it advanced in the trial court. And our answering the two questions presented to us in the manner we did should not deprive the trial court of its opportunity to consider where those two answers leave the parties as they proceed to final resolution of the matter.